**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **Sapphire Crossing LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**Rydoo Inc.,**<br><br>Defendant. | Case No. 1:21-cv-00296-MN-CJB<br><br>Patent Case<br><br>Jury Trial Demanded |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Sapphire Crossing LLC ("Plaintiff"), through its attorneys, complains of Rydoo Inc. ("Defendant"), and alleges the following:

### PARTIES

1. Plaintiff Sapphire Crossing LLC is a corporation organized and existing under the laws of Texas that maintains its principal place of business at 5570 FM 423, Suite 250, #2008, Frisco, TX 75034.

2. Defendant Rydoo Inc. is a corporation organized and existing under the laws of Delaware that maintains an established place of business at 222 Broadway 19th Floor, New York, NY 10038, United States. Rydoo Inc. can be served through its registered agent, Business Filings Incorporated, at 108 West 13th St., Wilmington, DE 19801.

### JURISDICTION

3. This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

4. This Court has exclusive subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Defendant because it has engaged in systematic and continuous business activities in this District and is incorporated in this District's state. As described below, Defendant has committed acts of patent infringement giving rise to this action within this District.

## VENUE

6. Venue is proper in this District under 28 U.S.C. § 1400(b) because Defendant has committed acts of patent infringement in this District and is incorporated in this District's state. In addition, Plaintiff has suffered harm in this district.

## PATENT-IN-SUIT

7. On May 10, 2005, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,891,633 ("the '633 Patent") to Xerox Corporation ("Xerox"), naming Ken Hayward, Marc J. Krolczyk, Dawn M. Marchionda, Thomas L. Wolf and James S. Laird as the inventors. The application leading to the '633 Patent was filed on July 30, 1999. The '633 Patent is titled "Image Transfer System." A copy of the '633 Patent is attached to this Complaint as **Exhibit 1**.

8. Claims 19-20 of the '633 Patent (hereinafter, the "Asserted Claims") are valid and enforceable and are infringed by Defendant. Attached as **Exhibit 2** is a claim chart depicting the details of Defendant's exemplary infringement of the Asserted Claims.

9. The Patent Trial and Appeal Board ("PTAB") denied institution of Claims 19-20 for *inter* partes review on August 29, 2016 and further denied Petitioner's request for a rehearing on October 24, 2016. *See* IPR2016-00723, D.I. 7, PTAB Institution of Inter Partes Review Denied in Part Granted in Part August 29, 2016 and IPR2016-00723, D.I. 14, Decision-Denying Petitioner's Request for Rehearing, October 24, 2016.

10. On November 25, 2015, Xerox assigned all right, title, and interest in and to the '633 Patent to

Ruby Sands LLC, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the ’633 Patent.

11. On March 26, 2018, Ruby Sands LLC assigned all right, title, and interest in and to the ’633 Patent to Sapphire Crossing LLC, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the ’633 Patent. Accordingly, Sapphire Crossing possesses the exclusive right and standing to prosecute the present action for infringement of the ’633 Patent by Defendant.

12. The ’633 Patent is directed to a novel image transfer system comprising a transfer device which can be operably connected to a computer. The system includes a reader for reading an image on a first medium, and a display for displaying an image transfer menu for effecting transfer of the image to perform a selected function. For example, the reader can be a mobile electronic device used to take a photograph of a first medium (for example, a receipt), and then offer on the display of the mobile electronic device a menu of different actions that can be selected to accomplish a particular task: for example, get cash rebates from digital coupons based on scanned receipts. A downloadable app can transform the mobile device into the claimed image transfer device. Without the app, the mobile device cannot display the first type of menu, read the receipt, establish a connection with a computer, transfer the image to the computer, or display the second type of menu.

13. Claim 19 of the ’633 Patent is directed to a method for transferring information from a first medium wherein the method provides an image transfer device having a scanner for reading an image on the first medium (for example a smartphone); the image transfer device reads the image on the first medium with the scanner (for example taking a picture with the smartphone); the image transfer device then uploads the electronic data including at least a portion of an image transfer menu to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device; and a processor of the image transfer device automatically merges the electronic data with the image read by the scanner and transfers the merged image by the transfer device to a second medium (for example servers).

## Claims 19 and 20 of the Patent-in-Suit

14. The Asserted Claim 19 of the ‘633 Patent recites the following:

| **Claim 19** |
| --- |
| 19. A method for transferring information from a first medium, the method comprising the steps of:<br><br>providing an image transfer device having a scanner for reading an image on the first medium;<br><br>reading the image on the first medium with the scanner;<br><br>automatically uploading electronic data including at least a portion of an image transfer menu to be displayed by the image transfer device to the transfer device from a computer connected to the transfer device;<br><br>with a processor of the image transfer device, automatically merging the electronic data with the image read by the scanner; and<br><br>transferring the merged image by the transfer device to a second medium. |

*See* **Exhibit 1**.

15. The Asserted Claim 20 of the ‘633 Patent recites the following:

| **Claim 20** |
| --- |
| 20. A method in accordance with claim **19**, wherein the electronic data uploaded from the computer to the image transfer device stays with the image transfer device after the computer is disconnected from the image transfer device. |

*See* **Exhibit 1**.

16. As noted in the section above, the application leading to the issuance of the Patent-in-Suit was filed on July 30, 1999.

## The Merging Step captures an inventive concept, whose implementation is detailed in the specification.

17. Claims 19 and 20 (dependent upon 19) recite “with a processor of the image transfer device,

**automatically merging the electronic data with the image read by the scanner**," where "**the** electronic data" must include "**at least a portion of an image transfer menu**" (the "Merging Step"). *See* **Exhibit 1** at Claims 19 and 20.

18. The Merging Step captures an inventive concept—a scanning device functionality that is unconventional over the prior art.

19. The PTAB has construed "image transfer menu" in the following way, and Sapphire concurs with this definition:

| **PTAB construction of "image transfer menu** |
| --- |
| "[W]e determine the broadest reasonable interpretation of "**image transfer menu**," for purposes of this decision, to encompass a list, displayed on a screen of a first computing device, of **available functions selectable by a user, including a function that necessitates either one or both of transmitting image data and receiving image data**." *See* IPR2016-00723, D.I. 7, PTAB Institution of Inter Partes Review Denied in Part Granted in Part at 14-16, August 29, 2016; emphasis added.; *see also* Exhibit 3 at 15 (FN 10) (the Court adopting this PTAB construction for purposes of resolving a Motion to Dismiss). |

20. The Merging Step therefore involves the merging of a scanned image with a portion of an image transfer menu, i.e., merging the scanned image with a menu function that was performed upon that scanned image.

21. And the specification describes *how* the processor of the image transfer device merges the scanned image with a portion of the image transfer menu:

| **The specification shows how the processor of the image transfer devices merges the scanned image with a portion of the image transfer menu** |
| --- |
| "The CPU 20 then, in block T4, merges the bitmap with the image data from the reader 18 of the device 12 such that the image printed by the print head 28 on the sheet medium 102, block T5 of FIG. 9, includes the message "Confidential Document" in the desired location. A similar |

> method may be used to add the time and date stamp, a company name, a logo or a watermark to images being transferred from the reader 18 to the print head 28 of the image transfer device 12." '633 Patent, 12:3-11; *see also id.*, Fig. 9; *see also* Court Recommendation, 17 (describing this citation as "one portion of the specification (in column where the concept of automatically merging a bitmap with downloaded image data (in a manner that might be akin to what is described in claim 19) is briefly addressed.")
>
> "In this embodiment of the present invention, some data 40 **used to effect image transfer with device 12 according to the enhanced menu features** is stored in the memory 34A of the computer 14. By way of example, **such data may include bitmaps representing time and date stamps, fixed messages, logos or watermarks to the added to the images** as well as the 45 coordinates for printing the bitmaps on sheet medium 102 (see FIG. 1)." ('633 patent, 11:40-46; emphasis added.)

22. The *Sapphire Crossings v. Quotient* Court explained in a Report and Recommendation denying a motion to dismiss that, at the pleadings stage, a bitmap can be a portion of an image transfer menu. *See* **Exhibit 3** at 16 (FN 11) ("Nevertheless, for purposes of resolving the Motion, the Court will assume that a bitmap can be a portion of an image transfer menu.").

23. The image transfer device can therefore merge a scanned image with a portion of the image transfer menu (which can be a bitmap, i.e. the part of the menu visible to the user) by "superimposing the menu/bitmap on top of the scanned image." *See* **Exhibit 3** at 16; *see also* **Exhibit 1**, '633 Patent at 12:3-11.

24. This understanding of the Merging Step is fully consistent with the infringement contentions alleged here: the accused product automatically merges a scanned copy of a paper receipt (i.e. the scanned image) with the menu option offers to deposit that receipt (i.e. the "portion of an image transfer menu"). The portion of this menu option that is visible to the user is itself in image file that is similar to the bitmap image file described in the specification.

25. And the Declaration of Mansoor Anjarwala from the *Sapphire Crossing LLC v. Quotient Technology, Inc.* Case No. 1:18-cv-01717 (D. Del), attached hereto as **Exhibit 4** and incorporated herein, further demonstrates that this inventive step captures a functionality that

is unconventional over the prior art.

**RYDOO'S INFRINGING METHOD**

26. Without authority from Sapphire Crossing, Rydoo uses (including by having its employees test and use an information transfer method that uses a reader for reading an image on a first medium and a display for displaying an image transfer menu to perform a selected function, i.e., Rydoo's App (the "Accused Instrumentality"). *See* **Exhibit 2**.

27. As recited in Claim 19, the Accused Instrumentality uses a method for transferring information (e.g., image of the paper order form) from a first medium (e.g., receipt) provides an image transfer device (e.g., smartphone) having a scanner (e.g., camera of the smartphone) for reading an image on the first medium. *Id.*

28. As recited in Claim 19, the Accused Instrumentality uses a method for transferring information from a first medium that reads the image on the first medium with the scanner. *Id.*

29. As recited in Claim 19, the Accused Instrumentality, upon information and belief, automatically uploads electronic data including at least a portion of an image transfer menu (e.g., the application will allow the user to enter the details of the transaction corresponding to the scanned image) to be displayed by the image transfer device (e.g., smartphone) to the transfer device from a computer (e.g., this information will be sent from an Rydoo server) connected to the transfer device. *Id.*

30. As recited in Claim 19, the Accused Instrumentality allows a user to enter/edit the details tied to a receipt image that is being uploaded and upon information and belief, in the case where a contact already exists and a user currently wants to add an image of a corresponding receipt, the details entry, and its modifiable fields will be sent from an Rydoo server to a user's mobile device. *Id.*

31. As recited in Claim 19, the Accused Instrumentality allows a user to enter/edit the transaction details tied to a receipt image that is being uploaded. On information and belief, in the case where a contact already exists and a user currently wants to add an image of a corresponding receipt, the contact entry and its modifiable fields will be sent from an Rydoo server to a user's

mobile device. The user can then add a receipt image to the entry or edit any preexisting contact fields. As such, an image transfer menu (e.g. a transaction details entry and its modifiable fields, which include the option to add a receipt image) is sent to an image transfer device (e.g. a user's smartphone with the Rydoo Application) from a computer connected to the transfer device (e.g. a Rydoo server connected to a user's smartphone over the internet). *Id.*

32. As recited in Claim 19, the Accused Instrumentality utilizes a processor (e.g., processor present in the smartphone) of the image transfer device to automatically merge the electronic data (e.g., the transaction details entered by a user) with the image (e.g. receipt image) read by the scanner (e.g., camera of the smartphone). *Id.*

33. The Accused Instrumentality must merge the particular transaction details with the image uploaded. *Id.*

34. As recited in Claim 19, the Accused Instrumentality must merge the receipt image and transaction details and convert said the combined data to a medium appropriate for transmittal over the internet to a server. *Id.*

35. As recited in Claim 20, the Accused Instrumentality includes electronic data (e.g., parts of the image transfer menu such as an contact entry and its modifiable fields) uploaded from the computer (e.g., an Rydoo server) to the image transfer device (e.g., a user's smartphone) stays with the image transfer device (e.g., cache of the user's smartphone) after the computer is disconnected from the image transfer device (e.g. when a user's smartphone is disconnected from the server, such as when the device's cellular or Wi-Fi connection is turned off, any contact entry already accessed will still remain displayed on the smartphone). *Id.*

36. On its website, www.rydoo.com, Rydoo specifically instructs users to use the Accused Instrumentality in a way that infringes Claims 19 and 20 of the '633 Patent.

## COUNT I: DIRECT INFRINGEMENT

37. Sapphire Crossing incorporates the above paragraphs herein by reference.

38. As a result of using (including having its employees internally test and use the Accused Instrumentality) Rydoo has directly infringed Claims 19 and 20 of the '633 Patent literally

and/or under the doctrine of equivalents.

39. As set forth above, the Accused Instrumentality is specifically designed to perform every step of Claims 19 and 20 of the ’633 Patent, and each use of the Accused Instrumentality by Rydoo will result in infringement of at those claims.

40. Upon information and belief, Rydoo has directly infringed Claims 19 and 20 of the ’633 Patent, *inter alia*, when it internally tested and used the Accused Instrumentality.

41. Upon information and belief, Rydoo’s employees and/or individuals under Rydoo’s control use the Accused Instrumentality to test the operation of the Accused Instrumentality and its various functions in the infringing manner described here, and thereby infringes Claims 19 and 20 of the ’633 Patent. Sapphire Crossing therefore alleges that Rydoo has directly infringed the ’633 Patent by using the Accused Instrumentality to perform the method of Claims 19 and 20.

42. Sapphire Crossing has suffered damages as a result of Rydoo’s direct infringement of the ’633 Patent.

43. Sapphire Crossing is entitled to recover damages adequate to compensate it for such infringement in an amount no less than a reasonable royalty under 35 U.S.C. § 284.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Sapphire Crossing prays for judgment against Rydoo on all the counts and for the following relief:

A. A determination that Sapphire Crossing is the owner of the right to sue and to recover for infringement of Claims 19 and 20 of the ’633 Patent;

B. A determination that Rydoo has directly infringed Claims 19 and 20 of the ’633 Patent;

C. An accounting for damages under 35 U.S.C. § 284 for infringement of Claims 19 and 20 of the ’633 Patent by Rydoo, and the award of damages so ascertained to Sapphire Crossing together with interest as provided by law;

D. An award of Sapphire Crossing's costs and expenses;

E. An award of Sapphire Crossing's attorneys' fees; and

F. Such other and further relief as this Court may deem proper, just and equitable.

Dated: April 6, 2021

Respectfully submitted,

CHONG LAW FIRM PA

*<u>/s/ Jimmy Chong</u>*
Jimmy Chong (#4839)
2961 Centerville Road, Suite 350
Wilmington, DE 19808
Telephone: (302) 999-9480
Facsimile: (877) 796-4627
Email: chong@chonglawfirm.com

**Counsel for Plaintiff**
**Sapphire Crossing LLC**